IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV393-MU

| | |
|---|---|
| KENNETH D. HELMS, ) <br> ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> SELLETHICS MARKETING GROUP, ) <br> INC., ) <br> ) <br> Defendant. ) <br> _____ ) | ORDER |

This mater is before the court upon the Defendant SellEthics Marketing Group, Inc.'s Motion for Summary Judgment. Plaintiff has filed a response, and the Defendant has filed a Reply. This matter is thus ripe for disposition.

**FACTS**

Defendant SellEthics is a food broker that represents various food manufacturers in selling to retail outlets such as grocery stores. Joel Barham ("Barham") has been the President and CEO of SellEthics for more than seven years.

Plaintiff Helms came to work for SellEthics on July 1, 1999 as a General Manager for North and South Carolina. On June 29, 1999, prior to his first day of employment, SellEthics and Helms entered into a Commission Agreement. The Commission Agreement provided that Helms would receive 12% of net income from all lines represented by SellEthics, excluding the McCormick and Signature brands. The McCormick and Signature brands were excluded from the Commission Agreement because SellEthics already had well-developed relationships with

1

those companies. The purpose of the Commission Agreement was to reward Helms for generating new business.

In July of 2001, Helms requested to be reassigned to a business manger position in Florida. On July 16, 2001, Barham sent Helms a memo establishing his new duties and stating, "The commission you earn above your salary is for the development of the Florida market." Helms worked under the modified commission arrangement until January 28, 2002, when Barham personally met with Helms and explained that the modified commission arrangement would no longer apply, but that Helms and other managers would be paid under a new profit sharing plan. Barham delivered a memo stating in pertinent part, "The shareholders have made the decision to end your current commission structure dated June 12, 1999."

After receiving this memo, SellEthics claims that Helms went to the stockholders of SellEthics and asked them to reconsider the decision to cancel his commission, which they denied. Helms denies doing this. In any event, Helms never complained about the new compensation arrangement or indicated any objection to being taken off commission while he was employed with SellEthics. Between July 1, 1999 and January 28, 2002, Helms earned no commissions under either the Commission Agreement or the revised arrangement for the Florida position.

Helms resigned his employment with SellEthics by letter dated August 25, 2005. The letter stated in part, "This resignation in no way releases any obligations as per our written agreement, dated June 29, 1999." This letter was the first time Helms indicated to SellEthics in any way that he thought the Commission Agreement should still be in effect. Barham responded to Helms' letter on August 30, 2005, indicating that, "The written agreement dated June 12, 1999

and signed June 29, 1999 ended January 28, 2002. Please see the attached memo that I personally hand delivered to you at that time." The Complaint in this action was filed August 14, 2006, and includes claims for breach of contract, constructive fraud, and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). The Complaint also includes a cause of action labeled "Joint Venture" and one labeled "Accounting."

**DISCUSSION**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Id. at 248. The movant may be entitled to summary judgment merely by showing that the other side will not be able to prove an essential element of its case with respect to which it has the burden of proof. Celotex, 477 U.S. at 322-23.

Defendant SellEthics asserts that it is entitled to judgment as a matter of law because Plaintiff's claims are barred by the statute of limitations. Plaintiff's breach of contract claim is subject to North Carolina's three year limitations statute. See N.C.Gen. Stat. § 1-52(1). The Plaintiff alleges breach of the Commission Agreement signed June 29, 1999. SellEthics modified the agreement on July 16, 2001 and then explicitly repudiated the entire Commission Agreement on January 28, 2002. In an action for breach of contract, the statute of limitations

3

begins to run on the date the defendant breaks its promise or takes action inconsistent with its promise. Pharmaresearch Corp. v. Mash, 163 N.C.App. 419, 594 S.E.2d 148 (2004). Thus, Plaintiff's cause of action for breach of the Commission Agreement would have accrued on January 28, 2002, when it explicitly repudiated the agreement. The statute expired three years later on January 28, 2005.

Plaintiff has submitted his affidavit in opposition to Defendant's motion. In his affidavit, Plaintiff asserts for the first time that he never received the memos from Joel Barham dated July 16, 2001 and January 28, 2001. However, Plainiff does not deny that Joel Barham personally met with him to advise him that the Commission Agreement would no longer apply. Neither does he deny that Barham told him he would be compensated under the company's new profit sharing plan, or that he was, in fact, paid under that plan until his resignation. There is no genuine dispute that Joel Barham notified the Plaintiff of the cancellation of the Commission Agreement in January of 2002. The Plaintiff's evidence is insufficient to genuinely dispute the fact that his contract cause of action accrued outside of the statute of limitations.

Plaintiff's NCUDTPA is likewise untimely, even though the NCUDTPA contains a four-year limitation period. See N.C.Gen.Sat.§ 75-16.2. To the extent this claim is based upon Defendant's alleged breach of the Commission Agreement, the deadline for Plaintiff to file suit under the NCUDTPA expired no later than January 28, 2006.

Plaintiff also alleges the existence of a joint venture, a fiduciary relationship, and constructive fraud. In order to establish a joint venture, Plaintiff must establish 1) an agreement, express or implied, to carry out a single business venture with joint sharing of the profits; and 2) each party to the joint venture must have a right in some measure to direct the conduct of the

4

other through a necessary fiduciary relationship. Southeastern Shelter Corp. v. BTU, Inc., 154 N.C.App. 321, 326, 572 S.E.2d 200, 204 (2002). In Pike v. Wachovia Bank & Trust Co., 274 N.C. 1, 8-9, 161 S.E.2d 453, 460 (1968), the North Carolina Supreme Court stated with regard to the first element that, "Facts showing the joining of funds, property, or labor, in a common purpose to attain a result for the benefit of the parties . . . will justify a finding that a joint [venture] exists." In this case, Plaintiff contributed no funds or property to SellEthics. He did contribute labor as an employee, for which he was paid a salary, commission, and fringe benefits. SellEthics had the right to direct Plaintiff's conduct, but there is no evidence that Plaintiff had a right to direct the conduct of SellEthics. In his affidavit, Plaintiff attempts to give the impression that he had some measure of control over SellEthics by stating that he "agreed" with certain decisions of the company. However, "agreeing" with a decision of one's employer is vastly different that having the power to control such decisions. Plaintiff's afffidavit is insufficient to place in dispute Joel Barham's testimony that "SellEthics had the authority to direct Helms' activities, like any employee. Helms did not have authority to direct the activities of SellEthics."

Plaintiff also attempts to support his allegations of a joint venture by attempting to portray the Commission Agreement as conferring to him an ownership interest in SellEthics. A plain reading of the agreement, however, supports no such contention. Any attempts by the Plaintiff to add to the Commission Agreement by alleging that it would continue until his death, that it conveyed some sort of equity interest in the grocery division, or that he was to be paid before the shareholders is barred by the parol evidence rule. The parol evidence rule prohibits the admission of evidence to vary, add to, or contradict the terms of a written instrument intended to be the final integration of the transaction. Hall v. Hotel L'Europe, Inc., 69 N.C.App. 664, 666,

5

318 S.E.2d 99, 101 (1984). A contract may be fully integrated even if it does not contain a merger clause. First Commerce Bank v. Dockery, 171 N.C.App. 297, 303, 615 S.E.2d 314, 318 (2005) (concurring). "[W]here the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement." Neal v. Marrone, 239 N.C. 73, 77, 79 S.E. 239, 242 (1953).

The Commission Agreement at issue here specifically provides that, "This contract is to clarify the agreement between SellEthics Marketing Group Inc. and you regarding annual commission payments." Thus, the court finds that the Commission Agreement was intended to integrate the parties' agreement regarding the commission payments. Plaintiff, through his affidavit, may not vary or add to the terms of this agreement. Plaintiff's evidence, as a matter of law, fails to show the existence of a joint venture.

Plaintiff's evidence is likewise insufficient to establish the relationship between himself and SellEthics as anything other than an ordinary employer and employee relationship. The North Carolina Supreme Court has held that generally, "the relation of employer and employee is not one of those regarded as confidential." Dalton v. Camp, 353 N.C. 647, 548 S.E.2d 704 (2001) (quoting King v. Atlantic Coast Line R.R. Co., 157 N.C. 44, 72 S.E. 801 (1911)). Thus, fiduciary relationships are generally not found in the employment context. In Dalton, the court found no fiduciary relationship even thought the employee in that case was reposed with a certain amount of confidence, because it did not rise to the level of "dominion and control." Id. at 652,

548 S.E.2d at 708. Plaintiff seeks to allege that there was a separate fiduciary relationship between himself and SellEthics because of the joint venture they created, in addition to their employment relationship. As noted above, the court finds that Plaintiff has failed to provide competent evidence of a joint venture.

Plaintiff cites Sara Lee Corp. v. Carter, 351 N.C. 27, 519 S.E.2d 308 (1999) in support of his argument that a fiduciary relationship may exist between employer and employee. The Sara Lee case, however, is inapplicable. Sara Lee stands for the proposition that, in some limited instances, an employee may be the fiduciary of his employer. In Sara Lee, the employee engaged in fraudulent buyer-seller transactions that were clearly covered by the NCUDTPA. The court held that the employee should not be shielded from liability simply because he was an employee of the company he defrauded.

Plaintiff's constructive fraud claim is also based on an alleged relationship of trust and confidence that arose form the parties' joint venture. Having failed to provide competent evidence of a joint venture, plaintiff cannot maintain his constructive fraud claim. See Southwestern Shelter, 154 N.C.App. at 329, 572 S.E.2d at 206. Likewise, his claim under the NCUDTPA, to the extent it is based upon constructive fraud, must fail.

Based on the foregoing, the court finds that there is no genuine issue of material fact, and judgment in favor of the Defendant is appropriate.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED.

Signed: December 1, 2006

Graham C. Mullen
United States District Judge